UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S. Y.,

      Plaintiff,

v.                         Case No:  2:20-cv-622-JES-MRM

CHOICE HOTELS
INTERNATIONAL, INC. and R &
M REAL ESTATE COMPANY,
INC.,

      Defendants.

---

**OPINION AND ORDER**

    This matter comes before the Court on review of defendant Choice Hotels International, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint with Prejudice (Doc. #19) filed on October 8, 2020, and defendant R&M Real Estate Company, Inc.'s Motion to Dismiss with Prejudice Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #21) filed on October 12, 2020.  Plaintiff filed an Opposition (Doc. #42) and a Memorandum in Opposition (Doc. #43) on November 5, 2020, to which the defendants each filed a Reply (Doc. #47; Doc. #48) on November 19, 2020.  For the reasons set forth below, the motions are denied.

**I.**

    The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a

case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.  See S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #1, p. 3).  On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants.  Id. at (Doc. #1, pp. 2-4).  The case was removed to federal court in February 2020.  Id. at (Doc. #1).  On April 15, 2020, the plaintiffs filed a Second Amended Complaint.  Id. at (Doc. #85).  On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020).  Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that plaintiff S.Y., a resident of Collier County, Florida, was a victim of continuous sex trafficking at a certain Comfort Inn & Executives Suites (the Comfort Inn Hotel) in Naples, Florida between 2013 and February 2016.  (Id. ¶¶ 2, 13, 22-24.)  The Complaint alleges that during this time period the Comfort Inn Hotel was owned and operated by defendant R&M Real Estate Company, Inc. (R&M) as a franchisee of defendant Choice Hotels International, Inc. (Choice).  (Id. ¶¶ 25-28, 49.)

The Complaint alleges the following six claims: (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise. (Id. pp. 33-49.) Counts One through Four are asserted against each defendant, while Counts Five and Six are asserted against R&M. (Id.)

## II.

The motions to dismiss raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed. The Court will address each of these arguments in turn.

### A. Shotgun Pleading

The Complaint identifies the defendants collectively as the "Comfort Inn Defendants." (Doc. #1, p. 1 introductory paragraph.) Both motions argue that because the Complaint groups them together, it should be dismissed as a shotgun pleading. (Doc. #19, pp. 12-13; Doc. #21, p. 5.)[1]

---

[1] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1324-25 (11th Cir. 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does indeed repeatedly refer to the defendants collectively as the "Comfort Inn Defendants." The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000). The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint. A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Comfort Inn Defendants." While defendants may disagree that such allegations are accurate, that dispute is for another day.

The group allegations do not fail to state a claim, <u>Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 953 F.3d 707, 732-33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.[2]

## B. Failure to State a Claim

The motions argue certain claims should be dismissed due to plaintiff's failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

---

[2] Both motions also argue the Complaint is a shotgun pleading because each count impermissibly adopts allegations previously asserted in the Complaint.  (Doc. #19, pp. 11-12; Doc. #21, p. 5.) The Court disagrees.   While each claim adopts allegations previously made in the Complaint, the claims do not adopt *all* the allegations previously made.   <u>See</u> <u>Weiland</u>, 792 F.3d at 1321 (describing most common type of shotgun pleading as "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"); <u>Spigot, Inc. v. Hoggatt</u>, 2020 WL 108905, *1 (M.D. Fla. Jan. 9, 2020) (dismissing complaint as shotgun pleading when each claim began by restating and re-alleging "each and every foregoing paragraph" of the complaint).

above the speculative level." <u>Id</u>. at 555; <u>see also</u> <u>Edwards v.</u> <u>Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, <u>Erickson v.</u> <u>Pardus</u>, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

**(1)  Trafficking Victims Protection Reauthorization Act**

Both motions challenge the one federal claim, the alleged violation of the TVPRA set forth in Count One. The TVPRA provides

a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a)  Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  To state a section 1595(a) claim in this case, plaintiff must plausibly allege that she was a victim of a

criminal offense under section 1591(a), and then must plausibly allege that defendant (1)"knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which defendant "knew or should have known has engaged in" sex trafficking under section 1591(a). S.Y., 476 F. Supp. 3d at 1255-56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

### (a)   Plausible Allegations Re: § 1591 Violation

Choice first argues that plaintiff fails to allege an underlying section 1591 violation by failing "to set out any facts describing any criminal investigation, indictment, prosecution, or conviction." (Doc. #19, p. 15.)  The Complaint alleges:

> 83. From approximately 2013 through February 2016, Plaintiff S.Y. was recruited to, enticed to, solicited to, held at, harbored as captive at and/or transported to various hotels in Naples, Florida by her sex traffickers to engage in commercial sex acts at these hotels on a regular, consistent and/or repeated basis. From approximately 2013 to 2014, Plaintiff S.Y. was trafficked by an individual only known to Plaintiff as Rambo, as well as other traffickers at the Comfort Inn Hotel. Then from approximately 2015 to February 2016, Plaintiff S.Y. was trafficked by Gregory Hines (aka Bowlegs), Keith Lewis, Anthony Barrata and others at the Comfort Inn Hotel.

(Doc. #1, ¶ 83.)  There is no requirement that the sex trafficker have been convicted criminally to support a civil claim against defendants for knowingly financially benefitting from the sex

trafficking, and Choice provides no legal support for this argument.[3]

Choice also argues that plaintiff has not alleged coercion giving rise to an underlying violation of section 1591, asserting that plaintiff was free to meet the "John" in the lobby, and she could walk the hallways without confinement. (Doc. #19, pp. 16-17.)

> For purposes of § 1591, "coercion" is defined as (1) "threats of serious harm to or physical restraint against any person;" (2) "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person"; or (3) "the abuse or threatened abuse of law or the legal process." Id. § 1591(e)(2). "Serious harm," in turn, is "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." Id. § 1591(e)(4).

United States v. Williams, 714 F. App'x 917, 918 (11th Cir. 2017). The allegations in the Complaint are more than conclusory with regard to the threats of serious harm or physical restraint, and do not only allege sexual abuse and prostitution. (Doc. #19, pp. 16-17.) Some of the relevant allegations are as follows:

---

[3] The only citation is to a case where the Complaint was found sufficient and plaintiff therein was able to represent that her trafficker had been indicted and sentenced. M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019).

57. At all material times, each and every Comfort Inn Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Comfort Inn Hotel, knew or should have known that traffickers were harboring, raping and assaulting victims at their hotels, including the Comfort Inn Hotel, and were forcing them to engage in "in call" services, wherein buyers ("Johns") would come to the hotels solely to purchase sex from these victims, as well as "out call" services, wherein the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

. . .

68. Each and every Comfort Inn Defendant, individually and by and through their actual or apparent agents, servants, franchisees, employees and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotels, including the Comfort Inn Hotel, that indicated the presence of human trafficking, including but not limited to:

    a. persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b. persons lacking freedom of movement or being constantly monitored;

    c. persons having no control over or possession of money or ID;

    d. persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

    e. persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

    f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. persons extending stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

i. the same person reserving multiple rooms;

j. a room being rented hourly, less than a day, or for an atypical extended stay;

k. attempts of persons to sell items to or beg from patrons or staff;

l. cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n. individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o. persons asking staff or patrons for food or money; and

p. persons taking cash or receipts left on tables.

. . .

136. Plaintiff S.Y. was a hotel guest at the Comfort Inn Hotel and Plaintiff was seriously and permanently injured as a direct result of each and every Comfort Inn Defendants' acts and omissions, in that each and every Comfort Inn Defendant permitted, harbored and facilitated illegal sex trafficking ventures to take place at the Comfort Inn Hotel whereby the Plaintiff S.Y. was routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

137. More specifically, at all material times, in the quest for profits, the acts and omissions of each and every Comfort Inn Defendant regarding the Comfort Inn Hotel caused the Plaintiff to suffer:

a. Forced labor;

    b. Forced confinement without safe means of escape;

    c. Assault and fear;

    d. Sickness, dizziness and headaches;

    e. Cuts, lacerations, abrasions and other physical harm;

    f. Mental anguish, humiliation, exploitation, degradation and mental distress;

    g. Suffocation, battery and rape;

    h. Shock, fright and post-traumatic stress;

    i. Overdose and drug-induced dangers (the Plaintiff suffered drug overdoses, drug-induced actions which caused harm to themselves [sic], physical deformities and scarfing [sic] from actions of the "Johns" and drug usage); and

    j. Invasion of privacy and wrongful entry of "Johns."

(Doc. #1, ¶¶ 57, 68, 136-137.) The allegations are not "simply a regurgitation of the statutes' wording woven together with conclusory statements and a generous use of 'and/or.'" Kelsey v. Goldstar Est. Buyers Corp., 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014). The motion will be denied as plaintiff has stated plausible facts in support of a section 1591 violation.

### (b)  "Participation" in a "Venture"

The defendants argue that the Complaint lacks well-pled allegations that it participated in a "venture," as required by section 1595(a). (Doc. #19, p. 23; Doc. #21, pp. 6-9.) Drawing on the definition of "venture" used in the criminal portion of the

statute, 18 U.S.C. § 1591(e)(6)[4], R&M asserts that a "venture" requires two or more individuals "associated in fact." (Doc. #21, p. 6.) Borrowing from the federal RICO definition of "enterprise," the defendants argue that "associated in fact" requires that persons must operate as a "continuing unit that functions with a common purpose." (Doc. #19, p. 23; Doc. #21, pp. 6-7.) R&M continues that in the context of a TVPRA claim against a hotel operator, the Complaint must "at least" allege a "continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." (Id. p. 7) (citing M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)); see also Doe v. Rickey Patel, LLC, 2020 WL 6121939, *5 (S.D. Fla. Sept. 30, 2020) ("In order to plead Defendants participated in a venture, Plaintiff must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker." (marks omitted)). R&M concludes that "a commercial transaction," such as the rental of a hotel room, "does not give rise to a reasonable inference that the participants in such a transaction shared any common purpose or otherwise 'associated in

---

[4] "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

fact.'"   (Doc. #21, p. 7.)   Similarly, Choice asserts that plaintiff has failed to allege it associated in fact with the non-party traffickers.  (Doc. #19, p. 23.)

Here, the Complaint alleges the defendants participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Comfort Inn Hotel to people" the defendants "knew or should have known were engaged in sex trafficking."  (Doc. #1, ¶ 160.)  The Complaint also alleges why the defendants should have been on notice of the sex trafficking and how it failed to prevent it. (Id. ¶¶ 4-16, 54-82, 115.)  The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a).  See Doe, 2020 WL 6121939, *5 ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); M.A., 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

Choice and R&M also argue that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is insufficient. (Doc. #19, pp. 18-19; Doc. #21, pp. 7-8.) The Court is not convinced. S.Y., 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA."). The defendants have not identified any controlling authority to the contrary.[5]

### (c) Knowingly Benefited From Participating in Venture

The motions next argue that the Complaint insufficiently alleges the defendants knowingly benefitted from participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship. (Doc. #19, pp. 17-23; Doc. #21, p. 9.) R&M argues that the allegation that it benefited generally from the operation of the hotel is insufficient for TVPRA liability. (Doc. #21, p. 9.)

---

[5] For the same reason, the Court denies Choice's request for the Court to "reconsider if the application of the definition of 'participation in a venture' as contained in § 1591 ought to apply to § 1595." (Doc. #19, p. 19.)

The Complaint alleges the defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Comfort Inn Hotel," and by receiving "other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking." (Doc. #1, ¶ 158.)  As to Choice as franchisor, the Complaint alleges it "received a significant franchise fee and continuous royalties on the Comfort Inn Hotel's gross revenue," while also exercising "ongoing and systematic control over operations at the Comfort Inn Hotel." (Id. ¶¶ 43, 115.)  The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element.  S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, *5 (S.D. Ohio Mar. 16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

### (d) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

Both motions argue the Complaint fails to plausibly allege the defendants knew or should have known that the "venture" was engaging in sex-trafficking crimes, i.e., that the defendants knew or should have known that an adult plaintiff was caused to engage in commercial sex by force, threats of force, fraud, or coercion. (Doc. #19, pp. 23-26; Doc. #21, pp. 10-12.)  Choice argues that "[a]t most," the Complaint's allegations address Choice's

constructive knowledge of prostitution and sex trafficking, but not the sex trafficking of plaintiff.  (Doc. #19, p. 25.) Similarly, R&M argues the Complaint lacks plausible allegations that it "knew or should have known" of any venture that trafficked plaintiff.  (Doc. #21, p. 12.)

The Court disagrees with this argument.  First of all, "knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018).  Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative— strictures of Rule 8."  Iqbal, 556 U.S. at 686–87.  The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the Comfort Inn Hotel as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

    b. Plaintiff's sex traffickers paid cash for the rooms at the Comfort Inn Hotel where the Plaintiff engaged in commercial sex acts;

    c. Plaintiff's sex traffickers booked extended stays at the Comfort Inn Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

    d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e. Plaintiff was confined in the rooms at the Comfort Inn Hotel for long periods of time;

f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

g. Men ("Johns") frequently entered and left the rooms at the Comfort Inn Hotel where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h. The staff and customers at the Comfort Inn Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Comfort Inn Defendant saw and/or reported to the Comfort Inn Hotel's respective administration that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

i. The rooms at the Comfort Inn Hotel were often stained with Plaintiff's blood and that of other trafficking victims after they were beaten or violently raped;

j. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

k. Plaintiff would frequently request clean towels and linens;

l. Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Comfort Inn Hotel in inappropriate attire;

m. Plaintiff S.Y. and other trafficking victims were often seen on the hotel's balconies in inappropriate attire or without any clothes at all;

n. Excessively loud noises would consistently come from Plaintiff's rooms;

o. During nighttime hours, Plaintiff and her "Johns" and drug clients would create noise in the public area of the Comfort Inn Hotel and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes; and

p. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

(Doc. #1, ¶ 98.)  Further, the Complaint alleges the defendants "knew or should have known about the nature of the sex trafficking venture at the Comfort Inn Hotel, including as they related to Plaintiff S.Y." due to the following:

a. Requests by the traffickers to rent adjoining rooms;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Excessive requests for towels and linens in the rooms used for sex trafficking;

f. Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

g. Plaintiff S.Y. being escorted by traffickers in and around the hotel;

h. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

i. Multiple men per day coming and going from the same rooms without luggage or personal possessions;

j. Knowledge of police and EMS activity at the Comfort Inn Hotel and at other locations near the Comfort Inn Hotel that was related to commercial sex work; and

k. Knowledge that Plaintiff S.Y. and other sex
trafficking victims were often seen naked and/or in
inappropriate attire on the hotel's balconies.

(Id. ¶ 159.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. S.Y., 476 F. Supp. 3d at 1257; A.B., 455 F. Supp. 3d at 193-94; Doe S.W., 2020 WL 1244192, *5-6; H.H., 2019 WL 6682152, *3; M.A., 425 F. Supp 3d at 967-68.

### (e)  Vicarious Liability

Finally, Choice argues the TVPRA claim should be dismissed because "[t]here is no vicarious liability under the plain meaning of the TVPRA." (Doc. #19, p. 26.)  The Court disagrees. See S.Y., 476 F. Supp. 3d at 1257-58 (finding plaintiff made sufficient allegations that franchisor was vicariously liable under section 1595 of the TVPRA to survive dismissal); see also J.C. v. Choice Hotels Int'l, Inc., 2020 WL 6318707, *10 (N.D. Ca. Oct. 28, 2020) (finding plaintiff's vicarious liability claim had "alleged sufficient facts to support a plausible claim that [defendants] received financial benefits from a venture they vicariously participate in (through their franchisees) that the franchises should have known was engaged in sex trafficking").

Choice also argues that even if it could be held vicariously liable under the TVPRA, plaintiff's allegations are insufficient to establish an agency relationship between Choice and its

franchisee.   (Doc. #19, p. 27.)   Having reviewed the allegations at issue, the Court finds them sufficient to create a plausible inference of an agency relationship.

"It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014).   However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 120 (Fla. 1995).

Here, the Complaint alleges Choice was in an agency relationship with R&M during the relevant time period.   (Doc. #1, ¶ 115.)   The Complaint further asserts that in a variety of ways Choice exercised control over the means and methods of how R&M conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing.   (Id. ¶ 116.)   The Court finds such allegations sufficient to support a plausible inference of an agency relationship.   See S.Y., 476 F. Supp. 3d at 1258; A.B., 455 F.

Supp. 3d at 195-97; Doe S.W., 2020 WL 1244192, *7; H.H., 2019 WL 6682152, *6; M.A., 425 F. Supp. 3d at 972.[6]

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies the motions for dismissal pursuant to Rule 12(b)(6).

**(2)  Florida RICO Violation**

Count Two of the Complaint asserts a claim against both defendants under Florida's civil RICO statute, section 772.104, Florida Statutes.  (Doc. #1, p. 35.)  To state a claim under the statute, plaintiff must allege plausible facts showing "(1)

---

[6] To the extent Choice suggests such a relationship does not in fact exist, such a determination "is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single contract in which case the determination may be a question of law to be determined by the court."  Cain, 994 F. Supp. 2d at 1253.  Since the Complaint alleges an agency relationship based upon the interaction between Choice and R&M, this is a question of fact inappropriate to decide on a motion to dismiss.  See Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V., 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances."); see also A.B. v. Hilton Worldwide Holdings Inc., 2020 WL 5371459, *10 (D. Or. Sept. 8, 2020) ("Defendants dispute whether they controlled the day-to-day operations of the hotels.  Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceedings this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor."); A.B., 455 F. Supp. 3d at 196 ("The evidence may ultimately prove Marriott does not exercise day-to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.").

conduct or participation in an enterprise through (2) a pattern of [criminal] activity." Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[7]

The defendants argue that plaintiff lacks standing because personal injuries cannot be remedied by RICO. (Doc. #19, p. 21; Doc. #21, p. 16.) There is some authority to suggest the Florida RICO statute, unlike the federal equivalent, does not "expressly limit recovery" to persons who have suffered injury to their business or property, and that recovery for personal injuries may be allowed. Berber v. Wells Fargo Bank, N.A., 2018 WL 10436236, at *3 (S.D. Fla. May 24, 2018) (collecting cases). The motion will be denied on this basis.

Plaintiff's RICO claim is asserted under sections 772.104(1) and (2), which provide civil remedies for violations of section 772.103, Florida Statutes. (Doc. #1, ¶ 162.) Section 772.103 contains four subsections of prohibited activities. § 772.103, Fla. Stat. R&M argues that because plaintiff fails "to specify

---

[7] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight." O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

the particular subsection of Section 772.103 giving rise to a Florida RICO claim," the claim is defective.  (Doc. #21, pp. 12-13.)  Plaintiff fails to address this argument in her response.

This court has previously stated that a RICO claim's failure to identify which subsection of section 772.103 is implicated is sufficient to warrant dismissal.  Lennon v. Marriott Ownership Resorts, Inc., 2019 WL 1440092, *10 (M.D. Fla. Mar. 31, 2019); Signeo Int'l Ltd. v. Wade, 2013 WL 12153590, *6 (M.D. Fla. Apr. 1, 2013).  However, the Court finds dismissal unnecessary in this case because it is apparent which subsection plaintiff is relying upon.  Section 772.103(3) makes it unlawful for any person associated with any enterprise to conduct or participate in such enterprise through a pattern of criminal activity.  In the Complaint, plaintiff alleges the defendants "conducted or participated in . . . the affairs of their respective RICO Enterprises through a pattern of numerous acts of racketeering activity . . . in violation of Fla. Stat. § 772.103."  (Doc. #1, ¶ 166.)  Because this allegation tracks the language of subsection three, the Court finds it provides sufficient notice of the applicable provision.  Accordingly, the Court denies R&M's request for dismissal on this basis.

Each of the motions also argue plaintiff has insufficiently pled the enterprise element of her claim.  (Doc. #19, pp. 28-31; Doc. #19, pp. 13-15.)  Florida's RICO statute defines enterprise

to include a "group of individuals associated in fact although not a legal entity." § 772.102(3), Fla. Stat. "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted).

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges the defendants "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking

scheme." (Doc. #1, ¶ 165.) Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme." (Id. ¶¶ 165-66.) The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgess v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion").

Next, R&M argues plaintiff has failed to plead the claim with the heightened level of specificity required for RICO claims. (Doc. #21, p. 15.) Plaintiff responds that because the RICO claim is based on non-fraudulent predicate acts, the heightened pleading

requirement is not applicable.   (Doc. #42, p. 22.)   The Court agrees with plaintiff.

While the Eleventh Circuit has described RICO claims as "essentially a certain breed of fraud claims" that "must be pled with an increased level of specificity" consistent with Rule 9 of the Federal Rules of Civil Procedure, Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 681 (11th Cir. 2014), such a standard applies only when the RICO claim is based on fraud or mistake, see D. Penguin Bros. Ltd. v. City Nat'l Bank, 587 F. App'x 663, 666 (2d Cir. 2014) ("In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b); for other elements of a RICO claim—such as non-fraud predicate acts or . . . the existence of an 'enterprise'—a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)."); Cardenas v. Toyota Motor Corp., 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) ("[B]ecause particularity pleading under Rule 9(b) is limited to circumstances constituting fraud, the non-fraud elements of a RICO claim can be alleged under Rule 8(a) standards." (citations and marks omitted)).   As the predicate acts in plaintiff's RICO claim are not based in fraud, the Court finds Rule 9 is not applicable. See Magnifico v. Villanueva, 783 F. Supp. 2d 1217, 1229, 1229 n.9 (S.D. Fla. 2011) (in addressing RICO allegations, court applied Rule 9(b) to "fraud-related predicate acts," such as mail, wire,

and immigration document fraud, and Rule 8 to "non-fraud predicate acts," such as human trafficking).

Choice next argues the RICO claim fails to plausibly allege plaintiff's harm was caused by Choice.[8]  (Doc. #19, pp. 31-32.) Under the Florida RICO statute, a plaintiff must demonstrate that their injuries were proximately caused by the RICO violations. See Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009).  "A wrongful act is a proximate cause if it is a substantive factor in the sequence of responsible causation."  Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (marks and citation omitted). Furthermore, a plaintiff "must show a 'direct relation between the injury asserted and the injurious conduct alleged.'"  Id. (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)). "Indirect harm is insufficient to sustain a cause of action under the RICO statutes."  Bortell, 2 So. 3d at 1047; see also O'Malley, 599 So. 2d at 1000 ("[I]ndirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.").

---

[8] While Choice states generally that plaintiff "failed to plausibly allege a 'pattern of racketeering activity,'" its argument focuses solely on the causation issue.  (Doc. #19, pp. 31-32.)

Choice argues that plaintiff has not alleged a direct relation between her injuries and Choice's purported violation of the RICO statute, and that the conduct responsible for plaintiff's alleged harm was the actions of the traffickers and "Johns." (Doc. #19, pp. 31-32.) Plaintiff responds that she has sufficiently pled proximate cause and losses as a direct result of the sex trafficking enterprise by alleging she "was at the Comfort Inn as part of the sexual trafficking scheme and her injuries were caused by and in furtherance of the sexual trafficking scheme." (Doc. #43, p. 34.) Having reviewed the allegations in the Complaint, the Court agrees with plaintiff.

The Complaint alleges each of defendants "was on notice of repeated incidences of sex trafficking occurring on their hotel premises," and yet "failed to take the necessary actions to prevent sex trafficking from taking place." (Doc. #1, ¶ 59.) The Complaint also alleges numerous ways in which the defendants could have identified and prevented the sex trafficking from occurring. (Id. ¶¶ 61-76.) Finally, the Complaint alleges the "acts and omissions of the Comfort Inn Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization" of plaintiff "for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking." (Id. ¶ 129.) "[B]y knowingly, or with reckless disregard, repeatedly allowing

sex trafficking to occur on their premises between 2013 and 2016," the defendants' "acts have yielded consistent results and caused economic, physical, and psychological injuries" to plaintiff. (Id. ¶¶ 168, 171.)

The Court finds these allegations sufficient to plead a "direct relation between the injury asserted and the injurious conduct alleged," Holmes, 503 U.S. at 268, and therefore the Complaint adequately pleads proximate cause, see Burgese, 101 F. Supp. 3d at 422 (finding allegations of physical injury and mental anguish "cognizable under the Florida RICO Act" and sufficient to survive a motion to dismiss); cf. Berber, 2018 WL 10436236, *5 ("Because Plaintiffs' asserted injuries arise from a set of actions entirely distinct form [sic] the alleged predicate RICO violations, proximate cause is lacking as a matter of law.").

Accordingly, the Court finds the Complaint's Florida RICO claim sufficiently plead and therefore will deny the motions to dismiss the claim.[9]

---

[9] To the extent Choice argues plaintiff fails to state a plausible claim for RICO conspiracy (Doc. #19, p. 32), the Court finds this issue moot. Although plaintiff uses the phrase "conducted or participated in, and/or conspired to conduct or participate in, the affairs" of the RICO enterprises (Doc. #1, ¶ 167), there does not appear to be a separate conspiracy claim within Count Two.

### (3)  Premise Liability

Count Three of the Complaint asserts a claim of premise liability against each defendant.  (Doc. #1, p. 37.)  A premise liability claim is a form of negligence action.  "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition."  Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001).  Plaintiff alleges the defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury.  (Doc. #1, ¶¶ 181-95.)  Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of the dangerous conditions plaintiff was in.  (Id. ¶¶ 186-88.)

### (a)  Statute of Limitations

The motions argue the premise liability claim should be dismissed because it is barred by the relevant statute of limitations.  (Doc. #19, p. 33; Doc. #21, p. 17.)  Under Florida law, the statute of limitations for negligence claims is four years.  § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted). "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges the sex trafficking occurred at the Comfort Inn Hotel "from approximately 2013 and continuing through approximately February of 2016." (Doc. #1, ¶ 13.) Both defendants argue that because plaintiff did not file her lawsuit until December 2019, her premise liability claim is at least partially time barred. (Doc. #19, p. 33; Doc. #21, p. 17.)

"Under Florida law, the statute of limitations begins to run when the cause of action accrues." Carnival Corp. v. Rolls-Royce PLC, 2009 WL 3861482, *5 (S.D. Fla. Nov. 17, 2009) (citing § 95.031, Fla. Stat.). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. "Under the continuing tort doctrine, the cause of action accrues when the tortious conduct ceases." Effs v. Sony Pictures Home Entm't, Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA 2016) (emphasis and citation omitted). "A continuing tort is

established by continual tortious acts, not by continual harmful effects from an original, completed act." Id. at 1245 (marks, emphasis, and citation omitted).

Here, plaintiff alleges she was a repeat victim of sex trafficking at the Comfort Inn Hotel between 2013 and February 2016. The Court finds such allegations sufficient to invoke the continuing tort doctrine. See Nat'l Sourcing, Inc. v. Bracciale, 2018 WL 6172430, *2 (M.D. Fla. Nov. 26, 2018) (finding allegation that a defendant's actions "continued to this day" inferred continuous tortious conduct, thereby making it plausible for the plaintiffs to assert the continuing tort doctrine as a basis to toll the statute of limitations). Accordingly, the Court finds that plaintiff's premise liability claim did not accrue until February 2016, and therefore she had until February 2020 to file a complaint asserting premises liability.

### (1) Choice

Plaintiff met this deadline by filing her First Amended Complaint against Choice on December 31, 2019. S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #3). While the Court determined severance of the parties was appropriate in the original action, S.Y., 476 F. Supp. 3d at 1259, and this Complaint was filed in August 2020, it appears that the December 2019 date is applicable for statute of limitations purposes under the

relation-back provisions of Rule 15(c) of the Federal Rules of Civil Procedure.

> Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. See McCurdy v. United States, 264 U.S. 484, 487, 44 S.Ct. 345, 346, 68 L.Ed. 801 (1924); Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[ ] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. Moore, 989 F.2d at 1132.

Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1368 (11th Cir. 2018). Accordingly, since it is not apparent from the face of the Complaint that the claim is time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.

For the same reasons, the Court rejects the argument that plaintiff's negligent hiring, supervision, and retention claim against Choice is also barred by the four-year statute of limitations. (Doc. #19, p. 33.)

### (2) R&M

R&M was not named in the December 2019 First Amended Complaint. Rather, it was first added as a defendant in April 2020. S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118

(Doc. #85.)   Nonetheless, the Court declines to dismiss based on the statute of limitations.   As noted, plaintiff is not required to negate an affirmative defense in her complaint.   La Grasta, 358 F.3d at 845.   It is not apparent from the face of the Complaint that the claim is time-barred because the Court cannot determine that plaintiff's premise liability claim does not relate back to the First Amended Complaint or is not subject to statutory or equitable tolling.[10]   Therefore, the motion to dismiss is denied at this stage of the proceedings.

To the extent R&M seeks dismissal of the other negligent claims on the same grounds (Doc. #21, p. 17), the Court's ruling applies to those claims as well.[11]

### (b)  Failure to State a Claim

Both defendants argue the premise liability claim is insufficiently pled.   Choice argues the claim fails because the

---

[10] "The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period."   Machules v. Dep't of Admin., 523 So. 2d 1132, 1133 (Fla. 1988); see also Fed. Deposit Ins. Corp. v. Nationwide Equities Corp., 304 So. 3d 1240, 1243–44 (Fla. 3d DCA 2020); § 95.051, Fla. Stat.

[11] R&M also suggests the negligence-based claims fail because plaintiff does not allege the specific dates upon which the acts occurred.   (Doc. #21, p. 17).   The Court disagrees.   See Watts v. City of Port St. Lucie, Fla., 2016 WL 633716, *3 (M.D. Fla. Feb. 17, 2016) ("The failure to allege the dates does not, alone, render the claims implausible under Twombly, given the other factual allegations in the First Amended Complaint.").

Complaint does not plausibly allege that Choice possessed or controlled the Comfort Inn Hotel. (Doc. #19, pp. 37-38.) The Court disagrees. As noted, a premise liability claim requires a defendant possess or control the premises at issue. Lisanti, 787 So. 2d at 37. Here, the Complaint alleges the defendants were the "owners, operators, managers, supervisors, controllers and innkeepers" of the Comfort Inn Hotel, and that Choice exercised control over the means and methods of how R&M conducted business at the hotel.[12] (Doc. #1, ¶¶ 28, 116.) While Choice may dispute these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege Choice had

_____

[12] Attached to Choice's motion are various documents, such as a State of Florida application to transact business by a foreign corporation, numerous Collier County permits for repairs, and Collier County tax records, that list R&M as the owner of the hotel property. (Doc. #19-1, pp. 42-69.) Choice requests the Court take judicial notice of these records to prove "the undisputed fact that Choice is not the owner or operator of the Comfort Inn Hotel." (Doc. #19, p. 8.) The Court declines to do so. See Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (recognizing that "a court has wide discretion to take judicial notice of facts"). First, the Complaint clearly alleges both Choice and R&M were the "owners, operators, managers, supervisors, controllers and innkeepers" of the Comfort Inn Hotel (Doc. #1, ¶ 28), and therefore there is a dispute as to this issue. Second, and more importantly, the Court has found the Complaint sufficiently alleges an agency relationship between Choice and R&M. Accordingly, whether R&M is listed on public records as the owner of the Comfort Inn Hotel is not dispositive to any of the claims alleged against Choice in the Complaint.

sufficient control of the Comfort Inn Hotel for premise liability purposes.

R&M argues there could be no duty to protect plaintiff from the criminal conduct of third parties because such conduct was not foreseeable. (Doc. #21, pp. 17-18.) The Court disagrees with this argument as well.

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. This includes the duty to protect customers from criminal attacks that are reasonably foreseeable." Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted). Such knowledge must only be pled generally. Fed. R. Civ. P. 9(b).

The Complaint contains sufficient allegations that sex trafficking was occurring at the Comfort Inn Hotel and that the defendants knew or should have known of it. (Doc. #1, ¶¶ 54-60, 98-108, 159.) The Complaint also contains sufficient allegations to support a claim of an agency relationship between Choice and R&M, and any factual challenge to such a relationship is premature. See Cain, 994 F. Supp. 2d at 1253; Mobil Oil Corp., 648 So. 2d at

120.  Accordingly, the Court finds the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

**(4)  Negligent Hiring, Supervision, and Retention**

Count Four of the Complaint asserts a claim of negligent hiring, supervision, and retention against the defendants.  (Doc. #1, p. 42.)  The motions seek dismissal of the claim based on pleading deficiencies.  Both defendants first argue plaintiff has improperly lumped multiple claims together.  (Doc. #19, pp. 33-34; Doc. #21, p. 18.)  "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  The Court finds that the claims are properly set forth in a single count.

To state a claim for negligent hiring, plaintiff must allege facts showing that

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

Groover v. Polk Cty. Bd. of Cty. Comm'rs, 460 F. Supp. 3d 1242, 1251 (M.D. Fla. 2020) (quoting Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002)).  "Different from negligent hiring, '[n]egligent retention occurs when, during the course of employment, the

employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment.'" Id. (quoting Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1461 (M.D. Fla. 1998)). "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Clary v. Armor Corr. Health Servs., Inc., 2014 WL 505126, *4 (M.D. Fla. Feb. 7, 2014) (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges each defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 202–03.) The Complaint further alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either

identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 205-07.)   The Complaint concludes that the defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result. (Id. ¶¶ 208-12.)   The Court finds these allegations sufficient to state plausible claims for negligent hiring, and negligent supervision/retention.

Both motions further argue the claim should be dismissed because the Complaint does not identify the alleged employees at issue. (Doc. #19, pp. 34-35; Doc. #21, p. 19.)   The Complaint alleges "[e]ach and every" defendant "was in control of the hiring" of hotel employees, and responsible for "instructing, training and supervising," yet employees failed "to refuse continued lodging services to human sex traffickers" and failed "to either identify and/or report the human sex trafficking." (Doc. #1, ¶¶ 202, 206-07.)   The Court is required to accept all factual allegations as true, Erickson, 551 U.S. at 94, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes," Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv., 493 F. App'x 994, 995 (11th Cir. 2012).   The Court finds that

specific employees are not required to be named.[13]   Accordingly, the Court denies the request to dismiss the negligent hiring, supervision, and retention claim.

### (5)   Negligent Rescue

Count Five of the Complaint asserts a claim of negligent rescue against R&M. (Doc. #1, p. 45.)  The Complaint alleges R&M, as the owner and operator of the Comfort Inn Hotel, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the Comfort Inn Hotel and to rescue their [sic] hotel guests, specifically Plaintiff S.Y., from the peril they [sic] created." (Id. ¶¶ 215, 218, 224.)   The Complaint alleges that by various acts and omissions, R&M breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. ¶¶ 220-22, 226-27, 229.)  R&M argues the negligent rescue claim should be dismissed because it is insufficiently pled. (Doc. #21, p. 20.)

There is no common law duty to rescue a stranger.  Estate of Ferguson v. Mascara, 2010 WL 11558195, *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty., 789 F.2d 1513, 1516 (11th Cir. 1986)).  "A well-established exception to this rule, however,

---

[13] To the extent Choice suggests it did not hire any of the employees at the hotel, the Complaint alleges that Choice made "employment decisions" for the hotel. (Doc. #1, ¶¶ 116.)

provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured.'"   De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013 WL 148401, *3 (S.D. Fla. Jan. 14, 2013)  (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also Abramson v. Ritz Carlton Hotel Co., LLC, 480 F. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties."  (citation omitted)).

R&M argues that hotels only have a limited duty to render aid to a guest it knew or should have known was ill or injured, and that the Complaint contains no plausible facts to suggest R&M knew plaintiff was in need of aid.  (Doc. #21, p. 20.)  However, the Court finds the Complaint contains sufficient allegations to satisfy this requirement.  (Doc. #1, ¶¶ 99, 100, 225.)

**(6)  Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise**

Finally, Count Six of the Complaint asserts a claim of aiding and abetting against R&M.  (Doc. #1, p. 47.)  The Complaint accuses R&M of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'"  (Id. ¶ 230.)  R&M argues that the claim must be dismissed because it is overly vague, fails to

articulate a cognizable, independent cause of action, and lacks well-pled factual allegations. (Doc. #21, p. 21.) The Court disagrees.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim. See Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); MP, LLC v. Sterling Holding, LLC, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty). This Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Angell v. Allergan Sales, LLC, 2019 WL 3958262, *8 (M.D. Fla. Aug. 22, 2019); see also Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (applying the above elements to three Florida tort claims). These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

The Court finds plaintiff's allegations are not impermissibly vague and, to the extent they allege actual knowledge[14], are

---

[14] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the

sufficient to state a claim.  Therefore, the Court denies R&M's request for dismissal.

**C. Anonymity**

Finally, Choice argues that plaintiff is not entitled to proceed anonymously as a matter of right, and that plaintiff must be required to file a formal motion to do so.  (Doc. #19, p. 39.) On February 24, 2021, plaintiff filed a Motion to Proceed Anonymously and for Entry of a Protective Order.  (Doc. #55.) Therefore, this issue is moot.

Accordingly, it is now

**ORDERED:**

1. Defendant Choice Hotels International, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint with Prejudice (Doc. #19) is **DENIED.**

2. Defendant R&M Real Estate Company, Inc.'s Motion to Dismiss with Prejudice Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #21) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   26th   day of April, 2021.

---

'knowledge' element of an aiding and abetting claim under Florida law." <u>Angell</u>, 2019 WL 3958262, *9.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record